# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17 C 7178 |
| | ) |
| AMERICAN ENERGY PRODUCTS, LLC and JUDE J. SHAO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

UL LLC has sued American Energy Products, LLC (AEP) and its chief executive officer Jude Shao, alleging violations of the federal Lanham Act and parallel state law claims. UL's claims arise from defendants' allegedly unauthorized use of UL's certification and service marks on gas fuel containers.

The Court takes the facts as they are alleged in UL's complaint, which it filed on October 4, 2017. UL, an Illinois-based company, tests and certifies products as meeting applicable safety standards. In its complaint in this case, UL alleges that AEP requested from UL a quote for testing AEP's canisters. UL and AEP entered into a series of written agreements under which AEP agreed to submit representative samples of its canisters to UL for testing so that UL could determine whether the canisters were eligible for use of its certification marks. AEP was authorized to place UL's marks on its products only after UL performed various procedures to verify compliance. AEP was prohibited from distributing products bearing the UL marks before these procedures

were completed.

In October 2014, UL issued AEP a preliminary certificate of compliance but advised AEP, through Shao, that it could not ship products bearing UL's mark until it passed an initial product inspection; Shao acknowledged this requirement. UL representatives visited AEP's facility, located in Texas, in November 2014, and then advised Shao that there were several issues that had to be resolved before AEP could distribute canisters with UL's mark. Shao later advised UL that it was not producing any product that required inspection, and still later confirmed that he would contact UL for a follow-up inspection when AEP began to produce product bearing the UL mark. He did not, however, contact UL after this to advise that AEP was producing products with the UL mark.

In October 2015, UL representatives visited AEP's facility and learned that the company had canisters in its inventory bearing the UL mark. UL advised Shao that this was unauthorized, and it issued notices stating that the canisters were not in compliance with UL standards for various reasons and that the UL mark could not be used and any shipment of UL-marked product had to be suspended. In November 2015, there was another visit to the Texas plant that resulted in yet another notice of non-compliance (a "variation notice," in UL lingo).

Despite all of this, UL contends, AEP shipped products with UL's certification mark, evidently both before and after the October and November 2015 site visits. This happened, UL alleges, despite Shao's acknowledgment that AEP had not passed the contractually required product inspection. UL issued another variation notice in April 2016, and that same month, it conducted another inspection at AEP's Texas facility and

2

found 23,000 canisters bearing what UL calls an "incomplete UL mark" that were boxed up and ready to ship, along with another 56,000 unfilled canisters with the same mark in stock. At the end of April 2016, UL terminated its agreement with AEP and told AEP, in connection with the termination notice, that it could not use any UL marks on or in connection with its products. According to UL, however, Shao and AEP continued to sell and ship the improperly marked canisters. These were sold at retail outlets in Texas and were also shipped to customers in other states, including Illinois, to which AEP shipped over 20,000 canisters.

UL alleges that AEP violated the Lanham Act and state law by using UL's mark—which it characterizes as a "counterfeit mark"—in connection with its products, thereby falsely suggesting that UL had certified AEP's canisters as compliant with safety standards. In its Lanham Act claims, UL seeks damages, including treble damages for intentional infringement, disgorgement of AEP's profits, and attorney's fees and costs as provided under the Lanham Act, and it also seeks an injunction barring AEP and Shao from using its marks.

AEP and Shao have filed four motions that are before the Court for determination. First, each defendant separately moved to dismiss, AEP arguing that personal jurisdiction is lacking in this district, and Shao arguing both the absence of personal jurisdiction and failure to state a claim against him as an individual. Next, the defendants filed a motion asking the Court to stay this case pending resolution of a lawsuit they filed in Texas state court. More recently, the defendants moved to dismiss for lack of federal subject matter jurisdiction.

## Discussion

**1. Subject matter jurisdiction**

Defendants contend that UL's lawsuit is a breach of contract claim dressed up as a Lanham Act claim and that, as a result, federal subject matter jurisdiction is lacking (the parties agree that complete diversity of citizenship does not exist). Defendants rely on *International Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912 (7th Cir. 2001). The defendant in that case, a maker of limousines and armored cars, acquired by contract from Earle Moloney, who had started and built the business, the right to use the name "Moloney Coach Builders" as well as other rights, including the right to use the business's history. Later, Earle reentered the armored stretch limousine business under the name International Armor & Limousine Co. International Armor's ads emphasized that Earle was its owner, he had been the industry's pioneer, and that the company was a "Moloney owned entity." When Moloney Coachbuilders protested, International Armor filed suit seeking a declaratory judgment that it was not violating the Lanham Act. The court of appeals ruled that this was a breach of contract suit, not a suit arising under federal law. The court relied on *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964), in which the Second Circuit, in a decision authored by Judge Friendly, concluded that a dispute about ownership of a copyright does not arise under federal law. *Int'l Armor*, 272 F.3d at 915-16. The court acknowledged that the contracts between Earle and Moloney Coachbuilders were *about* trademarks and that whichever side did not own the marks risked liability under the Lanham Act. *Id.* at 914. But that, the court concluded, did not mean that the claim *arose* under the Lanham Act: "[t]he dispute arises under the law of contracts; any trademark claims are entirely derivative of

4

the contract issues." *Id.* at 916. Defendants say this case is no different and that the suit is really about whether AEP complied with, or breached, its agreement with UL and that any trademark infringement claims are entirely derivative of the contract dispute.

The Court disagrees. As the Seventh Circuit noted in *International Armor*, "[a] claim might arise under federal law even though all dispositive issues depend on state law if the remedies differ." *Id.* This was not the case in *International Armor*: "the parties' supplemental briefs [did] not contend that the Lanham Act affords any remedy that is unavailable under the state law of contract, or makes that remedy easier to obtain . . . ." *Id.* Here matters are different; UL expressly contends that it is entitled to treble damages for intentional misconduct, a remedy that does not exist under Illinois contract law (not to mention attorney's fees).

More broadly, *International Armor* does not stand for the proposition that whenever a trademark infringement claim is intertwined with a contractual relationship, there is no federal jurisdiction over a resulting Lanham Act claim. Both *International Armor* and the Second Circuit decision on which it was premised, *Eliscu*, involved disputes over ownership of a trademark or copyright. That is not at issue in this case; the dispute involves authorized use of a mark. UL alleges that it owns a valid trademark; it contends that AEP and Shao used it without authority; and it seeks damages, disgorgement, attorney's fees, and an injunction, all under the Lanham Act. "That is enough to show that this case arises under the Act." *Nova Design Build, Inc. v. Grace Hotels, LLC*, 652 F.3d 814, 816 (7th Cir. 2011); *see also, Edgenet v Home Depot, U.S.A., Inc.*, 658 F.3d 662, 664 (7th Cir. 2011). *See generally Fed. Treas. Enter. Sojuzplodoimport v. Spirits Int'l, N.V.*, 623 F.3d 61 (2d Cir. 2010), in which the same

5

circuit that decided *Eliscu* concluded that so long as the complaint alleges a claim or seeks a remedy provided by the federal statute, a federal court has subject matter jurisdiction, "even if the plaintiff . . . is only entitled to that remedy on a prior showing of contractual entitlement." *Id.* at 69 (internal quotation marks omitted). "To adopt a contrary rule would leave plaintiffs who seek the remedies Congress created under the Lanham Act with two unappealing options"—engaging in piecemeal litigation (first, a state court suit to determine ownership, then a federal suit under the Lanham Act) or litigating everything in state court, thereby eliminating the Congressionally-provided choice of a federal forum. *Id.* at 69-70.

For these reasons, the Court denies defendants' motion to dismiss for lack of subject matter jurisdiction.

**2.     Personal jurisdiction**

Both AEP and Shao challenge the existence of personal jurisdiction over them in Illinois. This Court has personal jurisdiction if an Illinois court would, and that, in turn, depends on whether the exercise of personal jurisdiction in Illinois would be consistent with the requirements of the Due Process Clause of the Constitution's Fourteenth Amendment. *See, e.g., Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443-44 (7th Cir. 2010); *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 798 (N.D. Ill. 2016) (Kennelly, J). The key question is whether the defendant has sufficient minimum contacts with Illinois such that maintaining a suit here does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 327 U.S. 310, 316 (1945); *Felland v. Clifton*, 682 F.3d 665, 672-73 (7th Cir. 2012). Each defendant must have purposely established

minimum contacts with Illinois such that it reasonably should anticipate being sued here. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The defendant's conduct must "connect[ ] him to the forum [state] in a meaningful way." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014).

In this case, the record reflects that Shao, on behalf of AEP, reached out to UL, which is located in Illinois, to form a business relationship; at Shao's direction, AEP shipped product to UL in Illinois for inspection; Shao visited UL here in furtherance of establishing a relationship with UL; and AEP, again at Shao's direction, shipped into Illinois a significant quantity of allegedly infringing products bearing the UL mark. More broadly, AEP and Shao are alleged to have deliberately traded on the goodwill of an entity they knew to be based on Illinois and are alleged to have known that by doing so, they would cause injury to that Illinois entity. These facts are more than sufficient to enable a court in Illinois to exercise personal jurisdiction over both defendants and to distinguish this case from *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), upon which defendants rely. *See State of Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757-60 (7th Cir. 2010) *IPOX Schuster*, 191 F. Supp. 3d at 800-01.

### 3. Claim against Shao

UL has sufficiently alleged a basis for Shao's personal liability. Under *Dangler v. Imperial Machine Co.*, 11 F.2d 945 (7th Cir. 1926),

> [i]n the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction . . . . It is when the officer acts willfully and knowingly—that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own

7

willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability— that officers are held jointly with the company.

*Id.* at 947. Here UL does not allege simply that Shao was in general control of a company that engaged in trademark infringement. Rather, it alleges that he participated in the infringement knowingly and willfully. That is sufficient. *See, e.g., UIRC-GSA Holdings, Inc. v. Wm. Blair & Co.*, No. 15 C 9518, 2017 WL 3593117, at *4 (N.D. Ill. Aug. 21, 2017) (St. Eve, J.). *See generally Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 994 (7th Cir. 2004) (individual owner of alleged infringing entity may be sued as a joint tortfeasor if he was personally involved in the commission of the tort by the entity).

**4.     Stay under *Colorado River***

On August 2, 2017, about two months before UL filed this case, AEP sued Underwriters Laboratories, Inc. and one of its employees, Clinton Ferguson, in Texas state court, alleging malicious prosecution and abuse of process (arising from Underwriters' alleged providing of false information to the U.S. Department of Homeland Security that led to a seizure of AEP's products and a cease and desist order, later dropped), as well as business disparagement. AEP did not name UL, LLC as a defendant when it initially filed the lawsuit or even later, after it was advised that UL was the proper party. Rather, it did not name UL, LLC until October 23, 2017, a little under three weeks after UL filed the present suit against AEP and Shao. In the Texas case, written discovery has been served and answered, and at the time defendants sought to stay this case, depositions were being scheduled. AEP asked the Texas state court to enjoin UL from prosecuting the present federal lawsuit. The Texas court denied the motion but set an expedited trial date in May 2018.

Defendants' motion to stay the present case pending resolution of AEP's state court lawsuit invokes *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Under *Colorado River*, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *id.* at 813, and it may be invoked only in "exceptional circumstances" in which abstention "would clearly serve an important countervailing interest." *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 360 (7th Cir. 1996) (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)). A court conducts a two-part inquiry to determine if abstention is appropriate under *Colorado River*. First, the court determines whether the state and federal suits are parallel. If they are, the court then considers several factors to determine if there are exceptional circumstances that justify abstention. *Tyrer v. City of S. Beloit*, 456 F.3d 744, 751 (7th Cir. 2006). These are:

> 1) whether the [other court] has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the current forums; 5) the source of governing law, state or federal; 6) the adequacy of [other] action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Id.* at 755.

The two cases are at least arguably parallel; both involve issues relating to the contractual relationship between AEP and UL as well as issues relating to AEP's entitlement or non-entitlement to use UL's marks. But defendants do not identify any "important countervailing interest" justifying declination of the Court's "duty . . . to adjudicate a controversy properly before it." *Cty. of Allegheny*, 360 U.S. at 188. And it would be hard to do so, seeing as how UL's complaint in the present case includes

9

plainly non-contrived claims based on federal law, specifically the Lanham Act. It is true that the state court case was filed first, and AEP and Shao contend that it will be financially prohibitive for them to litigate the trademark claims here, but these considerations are outweighed by the factors cutting against abstention. The federal case, which includes Shao, is more comprehensive than the state court case and thus poses less of a risk of piecemeal litigation; the law governing the claims in the present suit is almost entirely federal (the law governing the parallel state law claims tracks federal law); UL, LLC was not named in the state court case until after it had sued AEP and Shao for trademark infringement in federal court; and UL's claims are not compulsory counterclaims under Texas procedure. As for relative progress, the main factor that has impeded progress in this case is defendants' filing of serial motions attacking the forum or the complaint, motions that all could have and should have been filed all at the same time.[1] The Court is more than willing to move this case as quickly as defendants reasonably request, avoid duplication of discovery already taken in the state court suit, and conduct further discovery in tandem. Defendants are not, however, entitled to a stay.

## Conclusion

For the reasons stated above, the Court denies defendants' motion to dismiss for lack of subject matter jurisdiction [36], their motions to dismiss for lack of personal

---

[1] UL never premised subject matter jurisdiction on anything other than federal question jurisdiction; it never claimed diversity of citizenship. Defendants' Rule 12(b)(1) motion thus could have and should have been filed at the outset of this suit, when their Rule 12(b)(2) motions were filed, and the same was true with regard to their motion to stay. There was no good reason to file the motions one at a time. Had defendants filed them all at the time they filed their motion to stay, the Court would have been able to rule on all of them many weeks ago.

jurisdiction and for failure to state a claim [10] [12], and their motion to stay [24]. The ruling date of 1/16/2018 is converted to a status hearing at 9:00 a.m. that morning, to be conducted by telephone unless out-of-town counsel for defendants would prefer to hold it in person. Counsel are to jointly call chambers (312-435-5618). At the status hearing, the Court will set a schedule for discovery and pretrial proceedings. The parties are to confer and attempt to agree on a schedule to propose to the Court.

Date: January 13, 2018

_____
MATTHEW F. KENNELLY
United States District Judge